EDGAR Z. PELLS *et al.*

*v.*

THOMAS SNELL *et al.*

*Filed at Springfield October 31, 1889.*

1. LIMITATIONS—*as to one who "resides out of the State"—in what a "residence" consists.* "Residence" means a fixed and permanent abode or dwelling place, at least for the time being, as contradistinguished from a mere temporary locality of existence. A temporary sojourn within a State for pleasure or business, accompanied by an intention to return to the State of one's former inhabitance, does not constitute a residence.

2. Mere absence from the State, however protracted, is not sufficient to constitute a residence elsewhere, within the meaning of the words, "resides out of the State," as used in the Limitation act. A person continually travelling from place to place in other States or in foreign countries, even if he has abandoned his residence here, can not be said to have acquired a residence, or to be residing in any other place.

3. "Residence" necessarily involves the idea of a local habitation or place of abode, and unless such abode is established or acquired, no length of absence can be held to constitute residence abroad.

4. It is not necessary that there should be an actual change of the party's domicile, in the strict legal sense of that word,—that is, an abandonment of his domicile in this State and the acquisition of a domicile elsewhere,—to bring him within the meaning of our Statute of Limitations; but he must have acquired a fixed and permanent abode or dwelling place out of this State, at least for the time being.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Ford county; the Hon. C. B. SMITH, Judge, presiding.

Mr. CHARLES H. WOOD, Mr. A. SAMPLE, Mr. E. C. GRAY, and Mr. F. L. COOK, for the appellants:

The words, "departs from and resides out of the State," in the Limitation law, mean an actual and not an apparent residence. Prior to the amendment of the section, merely departing from the State stopped the running of the statute. In addition to being out of the State, there is engrafted by the amendment the additional idea of an actual residence out of the State. *Campbell* v. *White*, 22 Mich. 195; *Langden* v. *Doud*, 6 Allen, 423; *Drew* v. *Drew*, 37 Me. 389; *Chaire* v. *Wilson*, 1 Bosw. 673; *Hackett* v. *Kendall*, 23 Vt. 275.

Apparent residence exists where there are acts, but no intention. But actual residence can only be determined by the union of acts and intention. *Town of Dore* v. *Town of Seneca*, 74 Ill. 101; *Cobb* v. *Smith*, 88 id. 200; *Smith* v. *People*, 44 id. 25; *Wells* v. *People*, id. 40; *Hayes* v. *Hayes*, 74 id. 312.

Mr. JAMES S. EWING, and Mr. T. C. KERRICK, for the appellees.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was an action of assumpsit, brought by Thomas Snell and others, surviving partners of the late firm of Snell, Taylor & Co., against William H. Pells, to recover of him certain moneys, the avails of a promissory note formerly held by him, to which the plaintiffs claim, *ex equo et bono*, to be entitled.

A former judgment, which was in favor of the defendant, was reversed by this court on appeal, and the facts involved in the controversy are so fully stated in the report of our former decision that they need not be repeated here. See *Snell, Taylor & Co.* v. *Pells*, 113 Ill. 145. After the decision of the former appeal the defendant died, and his death having been suggested on the record, his administrators were substituted as parties defendant. A second trial was then had in the Circuit Court before the court and a jury, which resulted in a judgment in favor of the plaintiffs for $5032 and costs. That judgment has been affirmed by the Appellate Court, and the record is now brought here on appeal from the judgment of that court.

To the declaration, which consisted only of the *indebitatus assumpsit* counts, the defendant pleaded *non assumpsit* and the Statute of Limitations. To the latter plea the plaintiff replied, first, that the defendant fraudulently concealed from the plaintiffs their said cause of action, and that the plaintiffs did not discover the same until within five years of the commencement of the suit; second, that at the time the plaintiffs' cause of action accrued, the defendant was absent from the State and did not return from such absence until within five years prior to the commencement of said suit; and, third, that after said cause of action accrued, the defendant departed from this State and thereafter resided out of this State for divers periods of time, which, when deducted from the entire period of time which elapsed between the accruing of the cause of action and the commencement of the suit, would leave less than five years. These replications were duly traversed by rejoinders.

At the trial, the plaintiffs gave evidence tending to show an agreement on the part of Pells, entered into by him upon a sufficient consideration, that the money which should be realized on said note should go to Snell, Taylor & Co., and that he received said money for them in pursuance of said agree-

ment. The jury, in addition to their general verdict finding the issues for the plaintiffs and assessing their damages, found specially, in response to questions of fact submitted to them, that Pells was not the agent of the plaintiffs in obtaining the subscriptions for which the note was given, or in procuring the note, but that he was their agent in obtaining the money realized from said note.

The point is made that the finding that Pells was not the agent of Snell, Taylor & Co. in obtaining the subscription and note necessitates the conclusion that the subscription and note were the property of Pells and not of Snell, Taylor & Co., and that it therefore follows, as a matter of law, that Snell, Taylor & Co. could have no more right to the proceeds of the note than they had to the subscription and note themselves. On this point we are satisfied with the reasoning and conclusions of the Appellate Court as stated in the opinion of Mr. Justice Pleasants, and therefore do not deem it necessary to do more than refer to what is there said. 31 Ill. App. 158.

The evidence shows that the money for which the suit was brought came into the hands of Pells in May, 1875, and that if the plaintiffs' cause of action accrued at all, it accrued at that time. As the suit was not brought until August 26, 1880, it is beyond controversy that more than five years intervened between the time the cause of action accrued and the commencement of the suit. The plaintiffs, however, in support of their replication, gave evidence tending to show, that for various periods of time during that interval, which if deducted would leave said interval much less than five years, Pells was actually absent from this State, and that during such absences he had an abode, of greater or less permanency in Orleans county in the State of New York. The plaintiffs' contention is, that during the time he was so absent from this State, he was "residing" in the State of New York, within the meaning of the eighteenth section of the Statute of Limitations. What would constitute a residence out of the State so as to entitle

the plaintiffs to have the periods of absence treated as no part of the time limited by the statute for the commencement of the suit, became a material question, and on that question the court, on his own motion, gave the jury the following instruction:

"If Pells went out of the State at various times merely for brief and temporary periods to attend to his business or to visit friends, and again returned without prolonging his stay for any considerable time, then such periods of absence should not be deducted from the five years. But for visits or periods of absence which should be prolonged any considerable length of time, showing that his absence was not merely temporary, then such times of absence should be deducted from the five years. In order to justify you in deducting time of absence from the State of different periods of time, the evidence ought to satisfy you that such periods of absence were extended so long as to justify the belief that he was not out of the State for a mere temporary business or social visit."

The terms of our present Statute of Limitations, so far as they apply to the questions here raised, differ materially from those of the statute in force prior to the revision of 1872. By the former statute, all the time the defendant was out of the State after the cause of action had accrued and before the commencement of the action, however temporary the absence or for whatever purpose, might be deducted. R. S. 1845, chap. 66, sec. 13; *Vallandingham* v. *Huston*, 4 Gilm. 125; *Chenot* v. *Lefevre*, 3 id. 637. By section 18 of the act of 1872, it is provided that if after the cause of action accrues, the defendant "departs from and resides out of the State," the time of his absence shall not constitute any part of the time limited for the commencement of the action.

The signification of the word "reside," as used in the present statute, presents a question not altogether free from difficulty. Numerous definitions of residence are to be found in the books, differing from each other mainly in respect to the greater or .

less degree of permanence of the inhabitancy or abode which they involve. See Abbott's Law Dict., title, Reside. There seems however to be a substantial agreement that residence means a fixed and permanent abode or dwelling-place, at least for the time being, as contradistinguished from a mere temporary locality of existence. *Matter of Wrigley,* 8 Wend. 134. Thus, it is held in *Frost* v. *Brisbin,* 18 Wend. 512, that a temporary sojourn within a State for pleasure or business, accompanied by an intention to return to the State of one's former inhabitance, does not constitute residence.

The instruction above recited seems to hold, that the sufficient and only test by which to determine whether Pells was residing out of the State within the meaning of the statute, was to be found in the length of his absence, wholly irrespective of whether he in fact retained his residence in the State, as the evidence for the defense tended to show, or whether he established for himself any fixed abode or dwelling-place in another State, either permanent or otherwise. To this view we are unable to give our assent. Mere absence from the State, however protracted, is not sufficient to constitute a residence elsewhere. A person continually travelling from place to place in other States or foreign countries, even if he has abandoned his residence here, can not be said to have acquired a residence, or to be residing in any other place. Residence necessarily involves the idea of a local habitation or place of abode, and unless such abode is established or acquired, no length of absence can be held to constitute residence abroad.

In several of the other States, whose statutes of limitations are identical, so far as the provision under consideration is concerned, with our present statute, it has been held that occasional and temporary absences from the State, however long continued, if they were not of such character as to change the party's domicile, are not to be deducted in computing the statutory term fixed for the limitation of an action. Such was the rule laid down in Massachusetts, in *Collector* v. *Halley,* 6

Gray, 517, and *Langdon* v. *Doud,* 6 Allen, 423, the statute of that State providing that the time of a defendant's absence should be deducted in case "he is absent from and resides out of the State." The Statute of the State of Vermont was in the same words, and the same construction was put upon it in *Hackett* v. *Kendall,* 23 Vt. 275, and *Hall* v. *Nasmith,* 28 id. 791. The same construction has been put upon the same language in Maine. *Drew* v. *Drew,* 37 Me. 389. See also, *Ford* v. *Babcock,* 2 Sandf. 518; *Wheeler* v. *Webster,* 1 E. D. Smith, 1; *Harden* v. *Palmer,* 2 id. 172; *Gilman* v. *Cutts,* 27 N. H. 348.

We would not be understood as adopting the doctrine of the decisions above cited to the extent of holding that there must be an actual change of the party's domicile, in the strict legal sense of that word, that is an abandonment of his domicile in this State and the acquisition of a domicile elsewhere, to bring him within the meaning of our Statute of Limitations, all we intend to hold being, that he must acquire a fixed and permanent abode or dwelling place out of this State, at least for the time being.

We are of the opinion that the instruction given to the jury in this case was erroneous, and as there was a very considerable conflict in the evidence bearing upon the question of Pells' residence, whether it was in this State or in the State of New York during the periods to which said evidence applied, the instruction must necessarily have had a tendency prejudicial to the defendant.

The only briefs filed by counsel in this court are those prepared by them for the Appellate Court, and most of the questions argued are mere questions of fact upon which the judgment of the Appellate Court is conclusive. As to questions of that character we of course can express no opinion, but for the error in the instruction the judgments of the Appellate Court and Circuit Court must be reversed, and the cause will be remanded to the latter court for a new trial.

*Judgment reversed.*